IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03146-WYD-MEH

reFX AUDIO SOFTWARE INC.,

        Plaintiff,

v.

DARRYL JOHNSON II,
ELEANOR TURNER,
KEITH ESTES, and
NICOLE FIELDS,

        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

        Plaintiff has filed an Amended Motion for Default Judgment against Defendants Darryl

Johnson II, Eleanor Turner and Nicole Fields [filed September 13, 2013; docket #110].  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to me for a

Report and Recommendation on November 25, 2013.  Docket #113.  The matter is briefed to the

extent allowed by court rules and the prevailing law, and the Court finds that oral argument is not

necessary for the adjudication of the motion.  Based upon the record and for the reasons that follow,

the Court recommends that the District Court **grant in part and deny in part** the motion as set forth

herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and
file any written objections in order to obtain reconsideration by the District Judge to whom this
case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those
findings or recommendations to which the objections are being made.  The District Court need
not consider frivolous, conclusive or general objections.  A party's failure to file such written

## BACKGROUND

In this case, Plaintiff's allegations involve a complicated technical process used to download a copyrighted work (here, "Nexus Software") through the BitTorrent program; therefore, this Court finds it necessary first to explain how BitTorrent works, then to note its findings of fact in this case.

## I.     BitTorrent Protocol

Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program.  This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used with the protocol, then describes how BitTorrent operates.  *Id.* at *1-*3.  First, the vocabulary used in the technology:

*Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.

*IP Address:* The unique identifying number of a device connected to the internet.

*Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.

*File:* A collection of related data packets treated as a unit.

---

objections to proposed findings and recommendations contained in this report may bar the party from a <u>de novo</u> determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

*Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.

*Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.

*BitTorrent:* A peer-to-peer file sharing protocol.

*Peer:* A BitTorrent user.

*Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).

*Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.

*Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.

*Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.

*Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).

*Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.

*Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted).  Judge Ludington proceeds to

describe the protocol and how BitTorrent works:

BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded

3

but never uploaded content."

. . .

Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."

Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:

1. Install BitTorrent (or have done so already).
2. Surf the web.
3. Click on a link to a *.torrent* file.
4. Select where to save the file locally, or select a partial download to resume.
5. Wait for download to complete.
6. Tell downloader to exit (it keeps uploading until this happens).

BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."

"In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."

In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:

Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

4

*Id.* at *2-*3 (citations omitted).

## II.     Findings of Fact

1.      Plaintiff is a Canadian corporation located at 6360 202nd Street, Unit 101, Langley British Columbia, V2Y 1N2, that produces, markets and sells sound mixing software.

2.      Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to its software including but not limited to Nexus 2 ("Nexus Software" or "Software").

3.      The Software is directed to a ROM synthesizer-plugin acting as an electronic musical instrument that plays back samples stored in ROM chips to generate sound, commonly known in the industry as a "Rompler." Because it is plug-in software, this Software can only be used in conjunction with professional music software used by professionals such as artists and producers.

4.      As set forth above, the Software incorporates distinctive copyrighted works, including but not limited to, "Nexus 2" and "Nexus 2.2.1."

5.      By incorporating a "mock" faceplate into the Software, a user can manipulate music with the movement of his or her mouse across the faceplate. Plaintiff's Software offers more than 1000 distinctive "factory preset" sounds and music for users to manipulate.  Users can also elect to add one to these 1000 factory presets with over 45 expansion packs of additional sounds.

6.      The Software contains a variety of wholly original material that is copyrightable subject matter under the laws of the United States.

7.      reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus 2, Copyright Registration Number TX 7-551-179 ("the '179 Copyright").

8.      reFX Audio, as the owner, holds the copyright registration in the computer program directed

to Nexus 2.2.1, Copyright Registration Number TX 7-551-176 ("the '176 Copyright").

9.      reFX Audio has in the past and currently is producing, marketing and selling the Software. Such Software comes in an array of options and pricing, currently: $299 (for Nexus 2 plus 1000 factory presets) and $2,589 (for Nexus 2 plus 1000 factory presets, and all 45 expansion packs).

10.     On July 2, 2013, Plaintiff filed the operative First Amended Complaint in this case.  Docket #55.

11.     Defendant, Darryl Johnson, formerly known as Doe 92, is an individual residing at 1349 Lima Street, Aurora, Colorado, 80010.

12.     Defendant, Eleanor Turner, formerly known as Doe 93, is an individual residing at 3244 Vine Street, Denver, Colorado, 80205.

13.     Defendant, Nicole Fields, formerly known as Doe 105, is an individual residing at 1045 Worchester Street, Aurora, Colorado, 80011.

14.     Without permission or authorization, Defendants acted in a collective and interdependent manner via BitTorrent to reproduce and distribute Plaintiff's copyrighted Software.

15.     Defendants uploaded and shared Plaintiff's Software in a "swarm," a group of users, or "peers," which  used the BitTorrent protocol to upload the Nexus Software within this swarm.

16.     Plaintiff retained an Internet investigator who, through the use of proprietary monitoring technology, can and has obtained evidence of the Defendants' IP addresses uploading the Software.

17.     Plaintiff has recorded Defendants' IP addresses publishing the Software via BitTorrent, as Plaintiff's investigator downloaded pieces of the Software from the Defendants' IP addresses on multiple occasions.

18.     Each Defendant initiated his or her infringing conduct by first intentionally logging into the

one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows and software. The Defendant then intentionally obtained a torrent file (the "Swarm Sharing Hash File" at issue in this suit, 68EA2EE5281DD2FBA6A33EDB4723209488027192 ("Hash 68EA")) for Plaintiff's Software from the index and intentionally loaded that torrent file into a computer program designed to read such files.

19.     With the torrent file intentionally loaded by a Defendant, his or her BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and "sharing" copies of the digital media described in Hash 68EA, namely, Plaintiff's Nexus Software, including with other identified Defendants and other peers. The program coordinated the copying of Plaintiff's Software to the Defendant's computer from the other users, or peers, sharing the Software.  As each piece of the Software was copied to the Defendant's computer, the downloaded pieces of Plaintiff's Software were immediately made available to all other peers.

20.     Each of these Defendants also immediately became an uploader, meaning that each Defendant's downloaded pieces were immediately available to other users seeking to obtain the file, without degradation in the Software's functionality or quality.  It is in this way that each Defendant simultaneously copied and distributed the Software. Thus, each participant in the BitTorrent swarm was an uploader (distributor) and a downloader (copier) of the transferred file.

21.     As more peers join the swarm, the likelihood of a successful download increases.  Because of the nature of the BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior user is online at the time the subsequent user downloads a file.  Thus, after a successful download of a piece, the piece is made available to all other users.

22.     In addition, because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file.

23.     Defendants also acted in concert with other swarm members and Defendants by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. Peer Exchange helps swarm members find more users that share the same data.

24.     Many Defendants also acted in concert with other Defendants by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. By allowing members of the swarm to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.

25.     Plaintiff issued third party subpoenas to Internet Service Providers (ISPs) at the outset of this case to enable the Plaintiff to determine the identity of the Defendants. At this time, each Defendant was known to Plaintiff only by the Internet Protocol Address ("IP Address") assigned to each Defendant by his or her Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of each Defendant was observed.

26.     The Doe Defendant with IP Address 24.8.222.60 on October 22, 2012 at 12:38:57 UTC was identified to Plaintiff by the ISP Comcast Cable as Darryl Johnson II.

27.     On July 10, 2013, Defendant Darryl Johnson II was served with a Summons and the First Amended Complaint.  Docket #79.

28.     Defendant Darryl Johnson II has failed to appear, plead, or otherwise defend in this action.

29.     The Doe Defendant with IP Address 24.9.17.17 on October 22, 2012 at 12:46:07 UTC was identified to Plaintiff by the ISP Comcast Cable as Eleanor Turner.

30.     On July 10, 2013, Defendant Eleanor Turner was served with a Summons and the First Amended Complaint. Docket #64.

31.     Defendant Eleanor Turner has failed to appear, plead, or otherwise defend in this action.

32.     The Doe Defendant with IP Address 75.70.102.93 on October 30, 2012 at 7:45:38 UTC was identified to Plaintiff by the ISP Comcast Cable as Nicole Fields.

33.     On July 10, 2013, Defendant Nicole Fields was served with a Summons and the First Amended Complaint. Docket #80.

34.     Defendant Nicole Fields has failed to appear, plead, or otherwise defend in this action.

35.     On August 27, 2013, Plaintiff filed a Motion for Entry of Clerk's Default as to Defendants Darryl Johnson II, Eleanor Turner, and Nicole Fields pursuant to Fed. R. Civ. P. 55(a). Docket #87.

36.     On August 30, 2013, the Clerk of the Court entered default for each of the Defendants named herein.  Docket #97.

37.     Plaintiff seeks statutory damages for willful infringement and injunctive relief in this case.

## PROCEDURAL HISTORY

Plaintiff initiated this action against 123 Doe Defendants on December 3, 2012.  The case was originally drawn to United States Senior District Judge Wiley Daniel and United States Magistrate Judge Kathleen Tafoya.  On April 12, 2013, Senior Judge Daniel reassigned the case to

the undersigned as a result of a decision to have the numerous, similar-type cases in this District

assigned to a single District Judge and Magistrate Judge for efficiency purposes.

On July 2, 2013, Plaintiff filed an Amended Complaint identifying 18 named Defendants in

this case.  Since that time, Plaintiff has dismissed 14 Defendants; therefore, all that remain are Keith

Estes and three Defendants who have not appeared and who are the subjects of the present motion,

Darryl Johnson II, Eleanor Turner and Nicole Fields.  Plaintiff served summonses and the Amended

Complaint upon Defendants Johnson, Turner and Fields on July 10, 2013; thus, the Defendants'

answers or other responses were due to be filed on or before July 31, 2013.  Dockets ##64, 79 and

80.  However, the Defendants filed no answer nor other response before the deadline; therefore, on

August 27, 2013, Plaintiff filed a Motion for Entry of Clerk's Default Against Defendants Johnson,

Turner and Fields.  Docket #87.  The Clerk of the Court entered default against the Defendants on

August 30, 2013.  Docket #97.  Plaintiff then filed a motion for default judgment on September 10,

2013; however, Plaintiff failed to attach a certificate demonstrating service of the motion upon the

three Defendants.  Docket #108.  Accordingly, Plaintiff filed the present "amended" motion seeking

default judgment on September 13, 2013, to which Plaintiff attached a certificate demonstrating

service of the motion upon the Defendants by mail.  Nevertheless, the Defendants neither responded

to the motion nor sought any extension of time within which to respond.

The Court is now fully advised and recommends as follows.

## LEGAL STANDARDS

Fed. R. Civ. P. 55 governs motions for default judgment.  Rule 55(b)(2) provides the

authority for the District Court to enter default judgment.  After an entry of default, a defendant

cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th

Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact") (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (finding that "[a] default judgment is unassailable on the merits.")); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true. *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1957) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded"). In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))

("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## ANALYSIS

Upon review of the record, the Court recommends finding that default judgment be entered in Plaintiff's favor against Defendants Johnson, Turner and Fields pursuant to Fed. R. Civ. P. 55(b)(2) as follows.

## I.      Jurisdiction and Liability

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction.  *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment).  Here, the record reveals that Defendant Darryl Johnson resides at 1349 Lima Street, Aurora, Colorado, 80010; Defendant Eleanor Turner resides at 3244 Vine Street, Denver, Colorado, 80205; and Defendant Nicole Fields resides at 1045 Worchester Street, Aurora, Colorado, 80011. As each Defendant resides in the District of Colorado, the Court has personal jurisdiction over these Defendants.  In addition, this is a copyright infringement case, and the federal courts have original jurisdiction in such cases.  *See* 28 U.S.C. § 1338.  The Copyright Act creates a cause of action in favor of the owner of a copyright for direct infringement.  17 U.S.C. § 501.

Furthermore, taking its allegations as true, the Plaintiff has established violations of its copyrights by Defendants Johnson, Turner and Fields, in that a computer at their residences

12

participated in an illegal download of Plaintiff's copyrighted Software.  A plaintiff is entitled to a

determination of liability unless it has failed to state a legal basis for relief or it is clear from the face

of the complaint that the allegations are not susceptible of proof.  *Weft, Inc.*, 630 F. Supp. at 1143.

Here, Plaintiff alleges the following claims, summarized as follows:

> Each defendant installed BitTorrent client software onto a computer to serve as the
> interface during the downloading/uploading process. First Amended Complaint, ¶
> 60. Each Defendant visited a torrent site that contained an index of files being made
> available by other users for copying and downloading. *Id.*, ¶¶ 61-62.  Using the
> BitTorrent protocol, Defendants then joined a BitTorrent swarm where they
> downloaded the Software from and uploaded the Software to the other members of
> the swarm.  *Id.*, ¶ 65.  Thus forming part of a BitTorrent swarm, Defendants
> participated in the process by which the Software was broken up into many pieces
> and distributed amongst the swarm members, resulting in the rapid viral sharing of
> the file throughout the collective peer users. *Id.*, ¶¶ 70-71.
>
> Through use of the BitTorrent protocol, Defendants republished and duplicated
> Plaintiff's Software in an effort to deprive Plaintiff of its exclusive rights in the
> Software under the Copyright Act. *Id.*, ¶ 82.  Defendants' acts of infringement were
> willful, intentional, in disregard of and with indifference to the rights of Plaintiff.
> *Id.*, ¶ 91.

Motion, docket #110 at 6.

There are two elements to a copyright infringement claim: "(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original."  *La Resolana

Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v.

Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). The plaintiff bears the burden of proof on both

elements.  *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir.

2005)).

Here, the Plaintiff alleges it owns the copyrights to the Nexus Software (listed above), and

provides the registration number, publication date and registration date for each version of the

Software.  *See supra*; *see also* Exhibits B and C to Amended Complaint, dockets ##55-2 and 55-3.

13

The Court takes Plaintiff's well-pleaded allegations as true.

For the second element, Plaintiff must prove that Defendants "unlawfully appropriated protected portions of the copyrighted work." *La Resolana Architects*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993)). "This requires proving both: (1) that defendant, as a factual matter, copied portions of plaintiff's work; and (2) that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.*; *see also Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 942 (10th Cir. 2002).

"A plaintiff can indirectly prove copying (in a factual sense) 'by establishing that a defendant had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77.F3d 1280, 1284 (10th Cir. 1996)). "A plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *Id.* (quoting *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993)). "Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, 'evidence that only creates a bare possibility that the defendant had access is not sufficient.'" *Id.* (quoting *Mag Jewelry Co. v. Cherokee, Inc.,* 496 F.3d 108, 117 (1st Cir. 2007)).

Once copying has been established, "liability for copyright infringement will attach only where protected elements of a copyrighted work are copied." *Id.* at 1180 (quoting *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284). "The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants'

[work]." *Id.* Substantial similarity is measured by whether an "ordinary observer," who is not specifically looking for disparities, would tend to overlook any differences between the works. *Id.*

In this case, Plaintiff has sufficiently alleged that Defendants copied its protected Software by demonstrating, through verified testimony, that its investigator used the search function of the peer-to-peer network to look for network users who were offering for distribution software files that were labeled with the names of Plaintiff's copyrighted Software. Declaration of Matthias Schroeder Padewet ("Padewet Declaration"), ¶ 23, docket #2-3. The investigator then conducted a download of the respective content and a careful and thorough review of that data. *Id.* The unique hash identifier of the file, 68EA2EE5281DD2FBA6A33EDB4723209488027192 ("Hash 68EA"), was extracted from the original torrent file as soon as the content had been verified as a valid copy of Plaintiff's copyrighted Software. *Id.* The investigator searched for individuals making the content identified by the hash value available to the public. *Id.* When a network user was located who was making that content available for distribution, the investigator downloaded a part of that file and stored other specific information in order to confirm that infringement was occurring and to identify the infringer by the unique Internet Protocol ("IP") address assigned to that Defendant by his/her ISP on the date and at the time of the Defendant's infringing activity. *Id.*

The investigator's records reflect that Defendant Johnson accessed the unique hash file, "Hash 68EA," using the BitTorrent protocol approximately 250 times on 30 days during the period October 22, 2012 through February 19, 2013. Logged Evidences of IP Address 24.8.222.60, docket #55-4 at 19-26 and #55-5 at 2. Defendant Turner accessed Hash 68EA approximately 280 times on 53 days during the period September 18, 2012 through March 21, 2013. Logged Evidences of IP Address 24.9.17.17, docket #55-5 at 3-12. Defendant Fields accessed Hash 68EA approximately

125 times on 11 days during the period January 18, 2013 through April 2, 2013.  Logged Evidences of IP Address 75.70.102.93, docket #55-6 at 2-6.  Taking these well-pled allegations as true, the Court finds that Plaintiff has established Defendants Johnson, Turner and Fields copied Plaintiff's copyright protected Software and recommends that the District Court find these Defendants have committed direct infringements of the Copyright Act against the Plaintiff.

However, the Court is not convinced that these factual allegations support a claim for contributory infringement.  Plaintiff alleges that the Defendants participated in a BitTorrent "swarm" with each other and other peers to cause the infringement of its copyrighted Software by other Defendants and swarm members.  Taking as true Plaintiff's allegations concerning the Defendants' actual access to Hash 68EA, the Court finds that Defendants Johnson, Turner and Fields never accessed the file on the same date and, thus, the allegations do not demonstrate a plausibility that these Defendants participated in the same BitTorrent swarm.  *See Patrick Collins, Inc.*, 2013 WL 359759, at *2 ( "to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier))."  Accordingly, the Court recommends that the District Court find the Plaintiff has failed to demonstrate the Defendants' liability as to contributory infringement.

## II.    Damages

Here, Plaintiff seeks statutory damages and costs for the alleged copyright infringements listed above.  Under federal copyright law, "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  Damages may be increased to up to $150,000 if the infringement is willful.  17 U.S.C. § 504(c)(2).

Against Defendants Johnson, Turner and Fields, Plaintiff seeks $9,250.00 from each

16

Defendant on the basis of its allegation of willful infringement.  Plaintiff also seeks proportionate

attorney's fees and costs in the amount of $604.44.  These are also authorized under the statute.  *Id.*

§ 505.  Finally, Plaintiff seeks injunctive relief to prevent any further violations by Defendants,

pursuant to 28 U.S.C. § 502 as follows:

> For entry of preliminary and permanent injunctions providing that Defendants shall
> be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted
> Software ("Plaintiff's Software"), including without limitation by using the Internet
> to reproduce or copy Plaintiff's Software, to distribute Plaintiff's Software, or to
> make Plaintiff's Software available for distribution to the public, except pursuant to
> a lawful license or with the express authority of Plaintiff.  Defendants also shall
> destroy all copies of Plaintiff's Software that Defendants have downloaded onto any
> computer hard drive or server without Plaintiff's authorization and shall destroy all
> copies of the downloaded Software transferred onto any physical medium or device
> in Defendants' possession, custody, or control.

Amended Complaint, docket #55 at 23.  Notably, 17 U.S.C. § 503(b) provides that "the court may

order the destruction ... of all copies ... found to have been made or used in violation of the copyright

owner's exclusive rights."

 This case is one of dozens alleging copyright infringement via the BitTorrent protocol that

are filed in this District and handled by me as Magistrate Judge.  Many of the defendants named in

these lawsuits settle very early in the case.  Some of those who do not settle have denied any

participation in copyright infringement.  Other defendants allege that their wireless connection may

have been used by someone else to participate in the alleged swarm against the plaintiff's protected

works.

However, in this case, there is evidence that Defendants Johnson, Turner and Fields not only

committed the infringements, but repeated the infringements over months-long periods.  Despite

being informed both before and during this litigation of the allegations against them, Defendants

have failed to answer or otherwise defend themselves in this case.  For these reasons, I believe that

Plaintiff has established entitlement to willful infringement damages.

Furthermore, Plaintiff has established that courts across the country have awarded anywhere from $2,250.00 to $30,000.00 per infringement in cases of this type. As an exercise of judicial discretion, I believe that a statutory damage award of $250.00 for each day on which infringement occurred is appropriate and just in this case to accomplish the intent set forth by Congress in passing the Copyright Act. Therefore, the Court recommends statutory damages awarded against Defendant Turner in the amount of $13,250.00; against Defendant Johnson in the amount of $7,500.00; and against Defendant Fields in the amount of $2,750.00. In addition, Plaintiff's request for $604.44 for attorney's fees and costs should be granted.

Finally, Plaintiff seeks injunctive relief prohibiting Defendants from infringing Plaintiff's copyrighted works and requiring Defendants to destroy all copies of Plaintiff's Software that Defendants have downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of the downloaded Software transferred onto any physical medium or device in Defendants' possession, custody, or control. The Court finds that Plaintiff's request for an order directing Defendants to "destroy all copies of the Software made or used by them in violation of [Plaintiff's] exclusive rights, as well as all masters in their possession from which such copies may be reproduced" (Motion at 12) is a reasonable request and should be granted.

However, the Plaintiff has failed to proffer evidence sufficient to justify its request to enjoin Defendants from continuing to infringe Plaintiff's copyrighted Software; Plaintiff has produced no evidence that, as of this date, Defendants actually possess the copyrighted Software on their computers and continue to upload the Software to others. Further, there is no evidence today that Defendants have downloaded (copied) any of the Plaintiff's copyrighted works since April 2, 2013.

18

The Court notes that, if the District Court were to grant Plaintiff's requested injunction for the deletion of Plaintiff's copyrighted Software on Defendants' computers, Defendants would be unable to "continue" uploading such works via the BitTorrent system.  Therefore, the Court recommends that the District Court deny Plaintiff's request for an order enjoining Defendants from continuing to infringe on the Plaintiff's copyrighted works.

## CONCLUSION

Based on the foregoing, and the entire record provided to the Court, I do respectfully RECOMMEND that the District Court **GRANT IN PART AND DENY IN PART** the Plaintiff's Amended Motion for Default Judgment against Defendants Darryl Johnson II, Eleanor Turner and Nicole Fields [filed September 13, 2013; docket #110] as follows:

1.  Enter judgment in Plaintiff's favor against Defendants Darryl Johnson II, Eleanor Turner and Nicole Fields for direct copyright infringement of the Plaintiff's copyrighted Software, as set forth in Counts I and II of the Complaint;

2.  Order Defendant Turner to pay to Plaintiff the sum of $13,250.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $604.44 for attorney's fees and costs as authorized by 17 U.S.C. § 505;

3.  Order Defendant Johnson to pay to Plaintiff the sum of $7,500.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $604.44 for attorney's fees and costs as authorized by 17 U.S.C. § 505;

4.  Order Defendant Fields to pay to Plaintiff the sum of $2,750.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $604.44 for attorney's fees and costs as authorized by 17 U.S.C. § 505;

19

5.     Order Defendants Johnson, Turner and Fields to permanently destroy all the digital media files relating to, and copies of, Plaintiff's copyrighted Software made or used by them in violation of Plaintiff's exclusive rights, as well as all masters in their possession, custody or control from which such copies may be reproduced; and

6.     Deny Plaintiff's request to permanently enjoin Defendants from continuing to infringe Plaintiff's copyrighted Software.

Dated at Denver, Colorado, this 9th day of December, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge